IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BEVERLY FERRARA, as Administrator
of the Estate of FREDERICK J.
ALBERTO, and BEVERLY FERRARA,
as Surviving Daughter of FREDERICK J.
ALBERTO,

       Plaintiff,

v.

SSC AUSTELL OPERATING
COMPANY, LLC d/b/a BRIAN CENTER
NURSING CARE/AUSTELL,

       Defendant.

Civil Action

File No. _____

## COMPLAINT

COMES NOW Plaintiff Beverly Ferrara, as Administrator of the Estate of Frederick J. Alberto and as Surviving Daughter of Frederick J. Alberto, and hereby files her Complaint against Defendant SSC Austell Operating Company, LLC d/b/a Brian Center Nursing Care/Austell, and shows the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Beverly Ferrara ("Plaintiff" or "Plaintiff Beverly Ferrara"), the sole surviving daughter of Frederick J. Alberto, is a resident of Powder Springs, Cobb

County, Georgia. Plaintiff is subject to the jurisdiction of this Court and is the proper party to bring this action.

2.

Plaintiff Beverly Ferrara was appointed Administrator of the Estate of Frederick J. Alberto by the Cobb County Probate Court on November 16, 2010. Accordingly, Plaintiff Beverly Ferrara is the proper party to bring an action on behalf of the Estate of Frederick J. Alberto.

3.

Defendant SSC Austell Operating Company, LLC d/b/a Brian Center Nursing Care/Austell ("Brian Center") is a foreign, for-profit corporation established under the laws of the state of Delaware, with its principal place of business in Wilmington, Delaware.  All members of Brian Center are residents of a state or states other than Georgia.  Brian Center transacts business in the state of Georgia, committed tortious acts or omissions in the state of Georgia, and is subject to personal jurisdiction in this state.  Brian Center may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process in Georgia, Corporation Process Company, at 2180 Satellite Boulevard, Suite 400, Gwinnett County, Duluth, GA 30097.

4.

There exists complete diversity among the parties which are presently before the Court.

5.

This Court has jurisdiction under 28 USC § 1332(a), in that it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is an action between citizens of different states.

6.

Jurisdiction and venue are proper in this Court.

## **FACTS**

7.

Mr. Frederick J. Alberto, a World War II veteran, died on September 13, 2009 due to bleeding in his brain, which occurred as a result of two unwitnessed falls and related head injuries at Brian Center, a nursing home in Cobb County, Georgia on August 30, 2009.

8.

As of August 25, 2009, Mr. Alberto was a resident of Carestone at Milford Chase, an assisted living facility.

9.

On August 25, 2009, Mr. Alberto fell at the assisted living facility. He presented that same day to WellStar Cobb Hospital complaining of severe back pain.

10.

A CT scan of his head was done on August 25, 2009 and was normal. The CT scan taken on August 25, 2009 confirmed the Mr. Alberto's brain and head were atraumatic and without bleeds.

11.

Mr. Alberto's medical issues were determined to be stable and he was recommended to begin physical therapy. Mr. Alberto was discharged from the hospital on August 28, 2009 for rehabilitation at Brian Center, a nursing home located in Cobb County, Georgia. One of the primary reasons that Mr. Alberto was admitted to Brian Center was because he was a fall risk and needed a higher level of care and supervision than could be provided in an assisted living facility like Carestone. Brian Center was required to, and agreed to, provide adequate supervision of Frederick Alberto in light of his recent fall history.

12.

Mr. Alberto presented to Brian Center on August 28, 2009. At all times applicable hereto, Brian Center was owned, operated, managed by Defendant.

13.

Among Brian Center's admitting diagnosis on August 28, 2009, were: lumbar compression fracture, fall, gait disturbance, and muscle atrophy.

14.

The staff at Brian Center assessed Mr. Alberto's head as "atraumatic" on August 29, 2009. His rehabilitation potential was classified by the Brian Center staff as "fair".

15.

On August 29, 2009, Mr. Alberto's mobility was documented as "very limited".

16.

His vision status was documented as "poor" in both eyes.

17.

Brian Center's Resident Transfer Evaluation Form notes that Mr. Alberto was "non-ambulatory" and had an "unsteady gait".

18.

Mr. Alberto's Fall Care Plan, apparently created on August 29, 2009, did not document a history of any recent fall, did not document his poor vision, did not document balance problems, did not document gait issues, did not document his diagnosis of Dementia, and did not document the use of assistive device, despite

the fact that all of the above should have been documented on the Fall Care Plan. The staff at Brian Center should have been aware of the aforementioned fall risks, should have considered the same in generating Mr. Alberto's Fall Care Plan, and should have considered the same while providing supervision to Mr. Alberto at Brian Center.

19.

The Fall Care Plan did not document the use of a wheelchair alarm, did not document the use of Velcro self-release seatbelt, and did not document the need for adequate supervision, despite the fact these safety measures should have been used prior to August 30, 2009.

20.

On August 29, 2009 at around 11:00 a.m., the chart reflects that Mr. Alberto was trying to get out of his wheelchair.

21.

On August 30, 2009 at around 1:00 a.m. the chart reflects that Mr. Alberto was ambulating in the hallway with an unsteady gait and was combative when the staff tried to redirect him.

22.

On August 30, 2009 at around 3:30 a.m., the chart reflects that Mr. Alberto was out of bed and the Brian Center staff was allowing him to push his own

wheelchair up and down the hall. Around that time, the nurses brought Mr. Alberto to the nurses' station.

23.

There is no documentation regarding Mr. Alberto's activity for the next two hours. Then, around 5:30 a.m., Mr. Alberto was brought to the nurses' station.

24.

Around 5:45 a.m. on August 30, 2009, there is a note in the chart that Mr. Alberto was "observed" on the floor between a chair and the wall. There is no documentation regarding the wheelchair alarm, which was allegedly in use at the time, alerting the staff to the fall. Mr. Alberto informed the staff that he had hit his head on a water cooler and that his head was hurting.

25.

At 6:45 a.m., Mr. Alberto was given Percocet due to complaints of head pain.

26.

At around 7:15 a.m. on August 30, 2009, Mr. Alberto was "noted" on the floor of the nurses' station by the medication cart. There is no documentation regarding the wheelchair alarm, which was allegedly in use at the time, alerting the staff to the fall. Mr. Alberto informed the staff that he hit his head on the medication cart.

27.

Prior to both falls on August 30, 2009, Mr. Alberto was allowed to ambulate around the halls of the Brian Center wearing only socks.

28.

On August 31, 2009, Mr. Alberto began having repeated seizures. His daughter was present at the facility at this time. Mr. Alberto was transferred via ambulance to WellStar Cobb Hospital.

29.

A CT scan performed on Mr. Alberto on August 31, 2009 showed bilateral subdural hematomas.

30.

A CT scan performed on Mr. Alberto on September 2, 2009 showed subdural hematomas, subarachnoid hemorrhage, hemorrhage along or within the medical right parieto-occipital lobe, and intraventricular hemorrhage in the occipital horns of the lateral ventricles.

31.

The traumatically-induced bleeding in Mr. Alberto's brain occurred as a result of the head strikes suffered during both falls at Brian Center.

32.

Mr. Alberto was transferred from WellStar Cobb Hospital to Hospice on September 8, 2009 with a diagnosis of intracranial hemorrhage.

33.

Mr. Alberto died under Hospice care on September 13, 2009 as a result of the injuries to, and bleeding in, his brain, which resulted from the two falls he suffered at Brian Center on August 30, 2009.

## COUNT I
## PROFESSIONAL NEGLIGENCE

34.

Plaintiff re-alleges and incorporates herein her prior allegations as if fully restated.

35.

On and before August 30, 2009, Frederick J. Alberto was a resident at Brian Center. As such, the healthcare providers at Brian Center owed him a duty to provide care and treatment using that degree of care and skill exercised under similar situations and like surrounding circumstances.

36.

Brian Center, through its agents, apparent agents, and employees, did not provide care and treatment to Frederick J. Alberto within the standard of care as set

forth above, and thus, was professionally negligent. The negligence of Defendant is set forth in the Affidavit of Suzette Cornelio, R.N., B.S.N., WCC, filed contemporaneously with this complaint as Exhibit "1," pursuant to the requirements of O.C.G.A. §§ 9-11-9.1 and 24-9-67.1. Such Affidavit is incorporated herein as if fully restated and fully satisfies the mandates of O.C.G.A. §§ 9-11-9.1 and 24-9-67.1.

37.

Defendant deviated from the accepted standard of care in at least the following ways:

a) Failing to have an appropriate Fall Care Plan in place for Frederick Alberto prior to August 30, 2009, based upon his risks and needs;

b) Failing to actually implement reasonable and adequate fall precautions for Frederick Alberto prior to August 30, 2009;

c) Failing to take reasonable steps to prevent Frederick Alberto from falling on August 30, 2009 at or around 5:45 a.m. and striking his head;

d) Failing to adequately monitor Frederick Alberto at the nurses' station or elsewhere, such that he suffered an unwitnessed fall at or around 5:45 a.m. on August 30, 2009;

e) Failing to actually implement reasonable and adequate fall precautions for Frederick Alberto after his first fall on August 30, 2009 at or around 5:45 a.m.;

f) Failing to monitor the effectiveness of fall care precautions then in place, if any, and modify interventions to prevent Frederick Alberto from again

falling on August 30, 2009 at or around 7:15 a.m., particularly in light of the fact that he had suffered a recent fall at Brian Center.; and,

g) Allowing Frederick Alberto to again sustain an unwitnessed fall at or around 7:15 a.m. on August 30, 2009 at the nurses' station and again strike his head.

38.

The above-listed deviations from the accepted standard of care, to a reasonable degree of medical certainty, proximately resulted in injuries to and the death of Frederick J. Alberto.

39.

Accordingly, Defendant is liable to the Estate of Frederick J. Alberto for all damages recoverable, including but not limited to pain and suffering, medical expenses, and funeral expenses.

40.

Defendant is also liable to Plaintiff Beverly Ferrara as surviving child of Frederick J. Alberto for all damages recoverable, including but not limited to the full value of his life.

41.

Defendant is responsible for the negligence of the staff, including the nurses, nurses' aides, non-administrator staff, and administrators at Brian Center, as

described herein, under the doctrine of *respondeat superior*, agency, or apparent agency.

## COUNT II
## LIABILITY OF DEFENDANT UNDER OCGA §51-1-6 BASED UPON VIOLATION OF THE *GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG TERM CARE FACILITIES* AND THE REGULATIONS OF THE GEORGIA DEPARTMENT OF HUMAN RESOURCES/COMMUNITY HEALTH

42.

Plaintiff re-alleges and incorporates herein her prior allegations as if fully restated.

43.

The state of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. §31-8-100 et seq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state, including personal care homes.

44.

Pursuant to O.C.G.A. § 31-8-133, residents of nursing homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Human Resources/Community Health codified at GA ADC § 290-5-39 et seq.

45.

GA ADC § 290-5-39 et seq. provides that each resident of a long-term care facility including personal care homes must receive care and services which shall be adequate, appropriate and *in compliance with applicable laws and regulations*.

46.

Brian Center's actions described above constitute many individual violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* at O.C.G.A. § 31-8-100 et seq. and the regulations of the Georgia Department of Human Resources codified at GA ADC § 290-5-39 et seq. as set out above.

47.

Specifically, among other violations, Defendant:

a) Failed to have an appropriate Fall Care Plan in place for Frederick Alberto;

b) Failed to actually implement reasonable and adequate fall precautions for Frederick Alberto;

c) Failed to take reasonable steps to prevent Frederick Alberto from falling at Brian Center;

d) Failed to adequately supervise and monitor Frederick Alberto such that he suffered an unwitnessed fall at or around 5:45 a.m on August 30, 2009;

e) Failed to actually implement reasonable and adequate fall precautions for Frederick Alberto after his first fall at Brian Center;

f) Failed to monitor the effectiveness of fall care precautions before and after Frederick J. Alberto fell at Brian Center; and,

g) Allowed Frederick Alberto to sustain an unwitnessed fall at or around 7:15 a.m. on August 30, 2009 at the nurses' station and strike his head as a result of having an insufficient Fall Care Plan in place and as a result of providing inadequate supervision and monitoring of Frederick J Alberto.

48.

Brian Center's violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above give rise to liability pursuant to O.C.G.A. §51-1-6.

49.

Brian Center's violations of the state law and regulations cited above and discussed in the attached Affidavit (which is fully incorporated herein by reference), to a reasonable degree of medical probability and certainty, proximately resulted in injuries to and the ultimately death of Frederick J. Alberto. Accordingly, the Plaintiff is entitled to an award of damages pursuant to O.C.G.A. §51-1-6.

50.

Brian Center is liable to the Estate of Frederick J. Alberto for all damages recoverable, including but not limited to pain and suffering, medical expenses, and funeral expenses.

51.

Brian Center is liable to Plaintiff Beverly Ferrara as surviving child of Frederick J. Alberto for all damages recoverable, including but not limited to the full value of his life.

## COUNT III
## NEGLIGENCE *PER SE*

52.

Plaintiff re-alleges and incorporates herein her prior allegations as if fully restated.

53.

Brian Center is a facility which is subject to both Georgia and Federal law.

54.

The below-cited regulations imposed duties on Brian Center, which duties were intended to protect the health and well-being of Frederick Alberto.

55.

Frederick Alberto was within the class of persons which the below-cited regulations were designed to protect. The harm outlined in this Complaint was the harm the below-cited statutes were intended to guard against.

56.

42 CFR 483.25 provides that a facility "must ensure that each resident receives adequate supervision and assistance devices to prevent accident."

57.

42 CFR 483.25 provides that a facility "must care for its residents in a manner and in an environment that promotes maintenance or enhancement of each resident's quality of life."

58.

Brian Center violated the above-cited statutes in connection with their acts and omissions described herein.

59.

Specifically, among other violations, Brian Center violated the above-cited statutes and was negligent *per se* because it:

a) Failed to have an appropriate Fall Care Plan in place for Frederick Alberto;

b) Failed to actually implement reasonable and adequate fall precautions for Frederick Alberto;

c) Failed to take reasonable steps to prevent Frederick Alberto from falling at Brian Center;

d) Failed to adequately supervise and monitor Frederick Alberto such that he suffered an unwitnessed fall at or around 5:45 a.m. on August 30, 2009;

e) Failed to actually implement reasonable and adequate fall precautions for Frederick Alberto after his first fall at Brian Center;

f) Failed to monitor the effectiveness of fall care precautions before and after Frederick J. Alberto fell at Brian Center; and,

g) Allowed Frederick Alberto to sustain an unwitnessed fall at or around 7:15 a.m. on August 30, 2009 at the nurses' station and strike his head as a result of having an insufficient Fall Care Plan in place and as a result of providing inadequate supervision and monitoring of Frederick J Alberto.

## COUNT IV
## VICARIOUS LIABILITY OF BRIAN CENTER

60.

Plaintiff re-alleges and incorporates herein her prior allegations as if fully restated.

61.

At all times relevant to this action, the Defendant employed the nurses, nursing assistants, administrators, and non-professional staff at Brian Center. At all times herein described, the staff providing care, treatment, and supervision to Frederick J. Alberto at Brian Center were acting within the scope of their employment with Defendant.

62.

Accordingly, Brian Center is vicariously liable for the negligent acts and omissions of all persons or entities under their control either direct or indirect,

including their respective employees, agents, and consultants.

63.

The duties alleged in the immediately preceding paragraph include, but are not limited to, proper training and supervision; proper hiring, background and referral checks; and proper retaining and dismissing of employees, agents, consultants and independent contractors.

64.

Brian Center is liable to the Estate of Frederick J. Alberto for all damages recoverable, including but not limited to pain and suffering, medical expenses, and funeral expenses.

65.

Brian Center is liable to Plaintiff Beverly Ferrara as surviving child of Frederick J. Alberto for all damages recoverable, including but not limited to the full value of his life.

## COUNT V
## PUNITIVE DAMAGES

66.

Plaintiff re-alleges and incorporates herein her prior allegations as if fully restated.

67.

The tortious acts and/or omissions of the Defendant are such as to clearly and convincingly evince a conscious indifference to the consequences of such acts or omissions and thereby demand and warrant an award of exemplary (punitive) damages against Defendant pursuant to O.C.G.A. §51-12-5.1 in an amount that will punish Defendant for the harm it has caused and that will deter Defendant from similar future misconduct.

68.

Specifically, Defendant intentionally allowed a resident who was a known fall risk to ambulate around Brian Center wearing only socks and twice knowingly left him unattended at the nurses' station, causing him to suffer two unwitnessed falls.

69.

Further, after Frederick Alberto's first fall and head injury on August 30, 2009, Defendant made no change to his care plan, did not institute additional safety measures, and did not provide any increased supervision for Mr. Alberto. Therefore, Mr. Alberto suffered another fall, and head injury, at Brian Center on August 30, 2009.

70.

As a result of these two falls, and associated head injuries, Mr. Alberto suffered significant mental and physical pain and suffering for approximately two weeks and ultimately died on September 13, 2009 as a result of the Defendant's actions.

71.

Accordingly, Defendant is liable to Plaintiff, as Administrator of the Estate of Frederick J. Alberto, for punitive damages.

**WHEREFORE**, Plaintiff prays that she have a trial on all issues and judgment against the Defendant as follows:

a.   That Plaintiff, as Administrator of the Estate of Frederick J. Alberto, recover against Defendant for all damages due to the Estate, including but not limited to: Frederick J. Alberto's pain and suffering, punitive damages, medical expenses, and funeral expenses;

b.   That Plaintiff, surviving daughter of Frederick J. Alberto, recover against Defendant for the full value of his life in an amount to be determined by the enlightened conscience of the jury;

c.   That Plaintiff recover against Defendant such other and further relief as this Court deems just and proper; and,

d.      That all issues be tried before a jury.


This __11__ day of March, 2011.

WATKINS, LOURIE, ROLL & CHANCE, PC


BY *Joseph W. Watkins*
      JOSEPH W. WATKINS
      Georgia Bar No. 740525
      jww@wlr.net

BY *Lance D. Lourie*
      LANCE D. LOURIE
      Georgia Bar No. 458520
      ldl@wlr.net

Tower Place 200, Suite 1050
3348 Peachtree Road, NE
Atlanta, Georgia, 30326
(p) (404) 760-7400
(f)  (404) 760-7409

LAW OFFICES OF ANDREW E. GOLDNER, LLC



BY *Andrew E. Goldner*
      ANDREW E. GOLDNER
      Georgia Bar No. 297329
      andrew@andrewgoldner.com

3355 Lenox Road, NE
Suite 850
Atlanta, Georgia 30326
(p) (404) 869-1580
(f) (404) 393-1099       ATTORNEYS FOR PLAINTIFF