STATE OF NEW JERSEY

Passaic County

## AFFIDAVIT OF SUZETTE CORNELIO, R.N., B.S.N., WCC

Personally appeared before the undersigned officer, duly authorized by law to administer oaths, Suzette Cornelio, R.N., B.S.N., WCC who, having first been duly sworn, deposes and says under oath the following:

1.

I am Suzette Cornelio, R.N., B.S.N., WCC an adult over the age of eighteen (18) and otherwise competent to give this Affidavit.  This Affidavit is based upon my personal knowledge, facts to which I am competent to testify, and education, training, and experience.

2.

I am a registered nurse specializing in long-term care. I am licensed to practice nursing in the State of New Jersey.  I graduated with a Bachelors of Science in Nursing (B.S.N.) in 1980 from Riverside College in Bacolod City, Phillippines. I am a member of the New Jersey National Director of Nursing Association and have been a member since 2004. I have taught and educated staff concerning various geriatric nursing subjects in long-term care settings, including fall prevention at nursing homes, for at least the past 20 years.

3.

From 1990 through the present, I have been employed at a number of long-term care facilities in New Jersey as a nurse, an Associate Director of Nursing, or a Director of Nursing. Since September 2007 (through the present), I have been the Director of Nursing at The Health Center at Bloomingdale, a long-term care facility in Bloomingdale, New Jersey. As part of my duties at The Health Center at Bloomingdale and the other long-term care facilities in which I have worked since

1

1990 (some of which are listed below), I have created, revised, and overseen the Falls Program and many Fall Care Plans for individual patients, in addition to providing general nursing care and treatment.  From June through September 2007, I was the Assistant Director of Nursing at West Caldwell Care Center, a long-term care facility in West Caldwell, New Jersey. From March 2007 through May 2007, I was the Director of Nursing at The Allendale Nursing Home in Allendale, New Jersey. From May 2006 through March 2007, I was the Director of Nursing at The Chateau at Rochelle Park, a long-term care facility in Rochelle Park, New Jersey. From August 2005 through May 2006, I was the Quality Care Coordinator at Cedar Crest Renaissance Gardens in Pompton Plains, New Jersey. As part of my duties as Quality Care Coordinator, I supervised nurses and other staff in the implementation of fall-reduction policies and procedures. From November 2003 through August 2005, I was the Director of Nursing at Lakeland Health Care Center, a long-term care facility in Haskell, New Jersey.  The list of my long-term care positions is included in my attached CV ("Exhibit A"), which is a true and accurate copy and is fully incorporated herein by reference.

4.

From 1990 through the present, I have been in the practice of nursing continuously, specializing in the field of long-term care. I have regularly seen, treated, participated in planning for, and followed long-term care residents for at least the last 20 years, including but not limited to the five years prior to Frederick Alberto's stay at Brian Center in August 2009. My experience includes, but is not limited to, daily nursing assessment and monitoring of patients and the creation, revision, and oversight of fall prevention measures and Fall Care Plans.

5.

Throughout my education, training, and experience, I have been a nurse, Assistant Director of Nursing, and Director of Nursing at skilled nursing and/or long-term care facilities

such as Brian Center Austell ("Brian Center").    I have also supervised nurses, and other professional as well as nonprofessional healthcare staff employed by and/or agents of skilled nursing and/or long-term care facilities regarding clinical areas of nursing such as daily nursing assessment, monitoring of patients, and fall prevention. I have also been employed by skilled nursing care facilities and/or long-term care facilities, and have provided day-to-day nursing care and other medical care and treatment to residents like Frederick Alberto for at least the last 20 years.

6.

I have extensive experience providing day-to-day nursing care and other medical care and treatment, including but not limited to fall care planning/prevention, to residents like Frederick Alberto. I have such experience as a result of having evaluated and treated such individuals for more than 20 years and as a result of having supervised others in the evaluation and treatment of such patients for the last 20 years. I would estimate that I have evaluated and treated approximately 120 such patients per year, continuously for more than the last 20 years.

7.

Based upon my education, training and experience, I am familiar with, have personal knowledge of, and am qualified to testify with regards to the applicable standard of medical care exercised by nurses, and other various health care provider personnel (professional and non-professional staff), including but not limited to, R.N.s, L.P.N.s, and C.N.A.s generally, in the evaluation, care, and treatment, including but not limited to fall care planning/prevention,  of residents such as Frederick Alberto presenting to skilled nursing care facilities and/or long term care facilities.

8.

At the time of the negligent acts and omissions discussed herein, I was continuously practicing nursing in the State of New Jersey and was licensed by the Medical Board of the State of New Jersey.   Exhibit "A" is a true and accurate copy of my curriculum vitae, which is incorporated herein by reference.

9.

This Affidavit is also based upon the facts and information shown within the records from the following assisted living facility, long-term care facility, and medical care providers, which I have reviewed:

(a) the records of Frederick Alberto from Carestone at Milford Chase, an assisted living facility;

(b) the records of Frederick Alberto from Wellstar Cobb Hospital, during both the August 25, 2009 and August 31, 2009 admissions;

(c) the records of Frederick Alberto from Brian Center;

(d) the Hospice records of Frederick Alberto; and,

(e) the Death Certificate of Frederick Alberto.

10.

Each and every opinion expressed herein is made to a reasonable degree of nursing/medical certainty.

11.

Based upon my review of the above-referenced records, I have found the following facts to have occurred, and they are the basis upon which my opinions are founded.

a)      Mr. Frederick Alberto was a resident of Carestone at Milford Chase, an assisted living facility, as of August 25, 2009;

b)      On August 25, 2009, Mr. Alberto fell at the assisted living facility. He presented that same day to Wellstar Cobb Hospital complaining of severe back pain;

4

c)      A CT scan of his head was done on August 25, 2009 and was normal;

d)      Mr. Alberto's medical issues were determined to be stable and he was recommended to begin physical therapy. Mr. Alberto was discharged from Wellstar Cobb Hospital on August 28, 2009 for rehabilitation at Brian Center, a skilled nursing facility;

e)      Mr. Alberto presented to Brian Center on August 28, 2009. Among Brian Center's admitting diagnosis on August 28, 2009, were: lumbar compression fracture, fall, gait disturbance, and muscle atrophy;

f)      Mr. Alberto's head was assessed as "atraumatic" on August 29, 2009. His rehabilitation potential was classified as "fair";

g)      On August 29, 2009, Mr. Alberto's mobility was documented as "very limited";

h)      His vision status was documented as "poor" in both eyes;

i)       Brian Center's Resident Transfer Evaluation Form notes that Mr. Alberto was "non-ambulatory" and had an "unsteady gait";

j)      Mr. Alberto's Fall Care Plan, apparently created on August 29, 2009, did not document a history of any recent fall, did not document poor vision, did not document balance problems, did not document gait issues, did not document his diagnosis of Dementia, and did not document the use of assistive device, despite the fact that all of the above should have been documented on the Fall Care Plan;

k)      The Fall Care Plan did not document the use of a wheelchair alarm, did not document the use of Velcro self-release seatbelt, and did not document the need for adequate supervision, despite the fact that these safety measures should have been used prior to August 30, 2009;

l)      On August 29, 2009 at around 11:00 a.m., the chart reflects that Mr. Alberto was trying to get out of his wheelchair;

5

m)    On August 30, 2009 at around 1:00 a.m., the chart reflects that Mr. Alberto was ambulating in the hallway with an unsteady gait and was combative when the staff tried to redirect him;

n)    On August 30, 2009 at around 3:30 a.m., the chart reflects that Mr. Alberto was out of bed and the Brian Center staff was allowing him to push his own wheelchair up and down the hall. Around that time, the nurses brought Mr. Alberto to the nurses' station;

o)    There is no documentation regarding Mr. Alberto's activity for the next two hours. Then, around 5:30 a.m., Mr. Alberto was brought to the nurses' station;

p)    Around 5:45 a.m. on August 30, 2009, there is a note in the chart that Mr. Alberto was "observed" on the floor between a chair and the wall. He informed the staff that he had hit his head on a water cooler and that his head was hurting;

q)    At around 6:45 a.m., Mr. Alberto was given Percocet due to complaints of head pain;

r)    At around 7:15 a.m. on August 30, 2009, Mr. Alberto was "noted" on the floor of the nurses' station by the medication cart. Mr. Alberto informed the staff that he hit his head on the medication cart;

s)    On August 31, 2009, Mr. Alberto began having repeated seizures. His daughter was present at the facility at this time. Mr. Alberto was transferred via ambulance to Wellstar Cobb Hospital;

t)    A CT scan performed on Mr. Alberto on August 31, 2009 showed bilateral subdural hematomas;

u)    A CT scan performed on Mr. Alberto on September 2, 2009 showed subdural hematomas, subarachnoid hemorrhage, hemorrhage along or within the medical right parieto-occipital lobe, and intraventricular hemorrhage in the occipital horns of the lateral ventricles;

v)     Mr. Alberto was transferred from Wellstar Cobb Hospital to Hospice on
       September 8, 2009 with a diagnosis of intracranial hemorrhage; and,

w)     Mr. Alberto died under Hospice care on September 13, 2009.

12.

Based on the information received to date and based upon on my background, training, experience, education, expertise described above, and knowledge of the standard of care required by the nurses, noted above, who were working at Brian Center in August 2009, it is my opinion that the nurses associated with/employed by Brian Center and/or a parent company of Brian Center deviated from the accepted standard of care and were negligent in at least the following manners:

a) Failing to have an appropriate Fall Care Plan in place for Frederick Alberto prior to August 30, 2009 based upon his risks and needs;

b) Failing to actually implement reasonable and adequate fall precautions for Frederick Alberto prior to August 30, 2009;

c) Failing to take reasonable steps to prevent Frederick Alberto from falling on August 30, 2009 at or around 5:45 a.m. and striking his head; and,

d) Failing to adequately monitor Frederick Alberto at the nurses' station or elsewhere, such that he suffered an unwitnessed fall at or around 5:45 a.m. on August 30, 2009;

e) Failing to actually implement reasonable and adequate fall precautions for Frederick Alberto after his first fall on August 30, 2009 at or around 5:45 a.m.;

f) Failing to monitor the effectiveness of fall care precautions then in place, if any, and modify interventions to prevent Frederick Alberto from again falling on August 30, 2009 at or around 7:15 a.m., particularly in light of the fact that he had suffered a recent fall at Brian Center; and,

g) Allowing Frederick Alberto to again sustain an unwitnessed fall at or around 7:15 a.m. at the nurses' station and again strike his head.

13.

The applicable standard of care required the providers, noted above, to among other things:

a) Create an appropriate individualized Fall Care Plan for Frederick Alberto prior to August 30, 2009;

b) Implement reasonable and adequate fall precautions for Frederick Alberto prior to August 30, 2009;

c) Take reasonable steps and provide adequate supervision to prevent Frederick Alberto from falling on August 30, 2009;

d) Adequately monitor Frederick Alberto at the nurses' station or elsewhere, to prevent an unwitnessed fall at or around 5:45 a.m on August 30, 2009;

e) Actually implement reasonable and adequate fall precautions for Frederick Alberto after his first fall on August 30, 2009 at or around 5:45 a.m.; and,

f) Take reasonable steps to prevent Frederick Alberto from again falling on August 30, 2009 at or around 7:15 a.m., particularly in light of the fact that he had suffered a recent fall on the same date at Brian Center.

14.

It is my opinion to a reasonable degree of nursing/medical certainty that if the appropriate standard of care had been followed, Frederick Alberto would not have suffered repeated unwitnessed falls at the Brian Center and would not have suffered the injuries to his brain which resulted from his falls at the Brian Center.

15.

It is my opinion to a reasonable degree of nursing/medical certainty that the deviations from the applicable standard of care by the employees or agents of Brian Center, as outlined above, proximately caused injuries to and the death of Frederick Alberto.

16.

This Affidavit is based on my training, experience, personal and professional knowledge, and my review of the aforementioned documents. It is not the purpose of this Affidavit to set forth each and every opinion or to include all criticisms, that I may have now or that I may have in the future, based upon a review of the records and the available information concerning the pertinent issues; however, the purpose of this Affidavit is to comply with O.C.G.A. § 9-11-9.1

and O.C.G.A. § 24-9-67.1 for use in filing a Complaint in this action, and any and all other

purposes allowed by law.

_Suzette Cornelio_

SUZETTE CORNELIO, RN

Sworn to and subscribed
before me this _13_ day
of February, 2011.

_signature_

Notary Public

My Commission Expires:

AVALON BEEK
Notary Public of New Jersey
My Comm. Expires May 29, 2012

9